**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. Nos. MJM-23-411, MJM-23-412** |
| | : | |
| **LAKEISHA PARKER,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

*********

## GOVERNMENT SENTENCING MEMORANDUM

The United States of America, by and through Kelly O. Hayes, United States Attorney for the District of Maryland, and Harry M. Gruber, Bijon A. Mostoufi, and Jared M. Beim, Assistant United States Attorneys, moves this Court to sentence Defendant Lakeisha Parker ("Parker" or "Defendant") to 48 months' incarceration in the Bureau of Prisons ("BOP"), supervised release of three years, restitution of $8,306,930.95,[1] and a $200 special assessment.

## The Defendant's Crimes

According to the factual stipulation in her plea agreement, from in or about 2019 to on or about November 2023, Parker participated in a money laundering conspiracy involving Yahya Sowe, a/k/a "Cash" ("Sowe"), Kevin Colon, Adanegbe Gift Osemwenkhae ("Gift"), Victor Killen, and others. ECF 237-1 at 1 (MJM-23-411), Attachment A at 1 ("Factual Stipulation"). The money that Parker knowingly laundered came from a variety of frauds, including business email compromise schemes involving the Victim College, Victim ABP, Victim AP, and the Victim Trust, as well as COVID-19 fraud involving Economic Injury Disaster Loans ("EIDLs") from the U.S. Small Business Administration ("SBA"). Parker was personally involved in laundering a very significant amount of money – more than $1 million in fraud proceeds. ECF 237-1 at 2 and

1 The government's restitution calculation is set forth in Exhibit 1.

6 (Factual Stipulation).

Parker's shell entity, which she created in furtherance of the money laundering, was called Parker Transports LLC. ECF 237-1 at 1 (Factual Stipulation). Parker opened numerous related bank accounts under the Parker Transports LLC facade, including a Bank of America account ending in 1316 ("BOA 1316"), a Citibank account ending in 0305 ("Citi 0305"), a JP Morgan Chase account ending in 5057 ("JPMC 5057"), a SunTrust/Truist account ending in 9281 ("Truist 9281"), and a Woodforest account ending in 1211 ("Woodforest 1211"). Parker and her co-conspirators then used these accounts and accounts controlled by others in the conspiracy to launder fraud funds. *See id*. The purpose of the conspiracy was to promote the underlying frauds and conceal and disguise the fraud proceeds. *Id.* at 1-2.

Parker worked on behalf of the larger money laundering conspiracy coordinated in the Baltimore-Washington region by Gift and Sowe. Parker communicated with the other members of the conspiracy through encrypted messaging apps, working closely with Gift in particular. Parker provided her Parker Transports LLC business account to other members of the conspiracy so that they could collect fraud proceedings. Following directions, Parker kept a portion of the fraud funds for herself before engaging in multiple financial transactions in quick succession. ECF 237-1 at 2 (Factual Stipulation).

Bank account holders, such as Parker, used Telegram and WhatsApp to provide higher-ups such as Gift and Sowe with images of the financial transactions they were conducting. This was a method of controlling the individuals working with them and ensuring that persons such as Parker carried out their designated laundering.

<u>SBA COVID-19 Fraud</u>

In furtherance of the COVID-19 fraud, Parker provided Gift and other co-conspirators with information about her Parker Transports LLC accounts. Co-conspirators submitted fraudulent

EIDL applications on behalf of different persons and shell entities. Though Parker is not alleged to have submitted or filed the applications, Parker was essential to the success of the scheme. Parker's accounts not only received layered SBA proceeds, but they received SBA funds directly. As shown below, Parker's account directly received a substantial amount of money directly from the SBA.

June 2020 PNC 2986 Monthly Statement

**ACH Additions**

| Date posted | Amount | Transaction description | Reference number |
|---|---|---|---|
| 06/29 | 107,100.00 | Corporate ACH Sbad Treas 310 361680800773000 | 00020181010221106 |

September 2020 Woodforest 1211 Monthly Statement

**Transactions**

| Date | Credits | Debits | Balance | Description | |
|---|---|---|---|---|---|
| 09-03 | 123,000.00 | | 123,027.49 | ACH-MISC PAY 778916820873000 SBAD TREAS 310 | |
| 09-04 | | 123,000.00 | 27.49 | RETURN ACH CREDIT | MISC DB |
| 09-30 | | 12.00 | 15.49 | MAINTENANCE FEE | SVC CH* |

The accounts controlled by Parker through her shell entity, Parker Transports LLC, received over $550,000 in EIDL fraud proceeds. ECF 237-1 at 6. Parker also was willing to engage in foreign wire transfers by sending money to China. *Id.* In a July 2020 transfer to China, Parker lied to PNC Bank, claiming that the purpose of the $45,000 transfer was to purchase a truck when she knew then and there that was false. *Id.* Federal agents also found evidence that in August 2020, Parker tried to send $40,000 to China, and provided false information to the bank about the purpose of the attempted transfer, which the bank figured out did not make sense based on the entity receiving the funds:

> WIRE TO PURCHASE TRUCK BUT BENE DOES NOT SELL TRUCKS PER GOOGLE, THEY DEAL IN PRODUCTION OF OF MONOSODIUM GLUTAMATE AND OTHER FLAVORING PRODUCTS. MULTIPLE ATTMEPTS MADE TO REACH THE CLIENT FOR ADDITIONAL QUESTIONS BUT NO ANSWER, WIRE HELD UNTIL NEXT DAY AND BRANCHA LSO ATTEMPTED TO REACH CLIENT. WIRE CANCELED AT NOON.

Parker also engaged in voluminous cash withdrawals and converted fraud funds to cashier's

checks, further helping to conceal the frauds and fraud proceeds. *Id.*

In addition to the SBA fraud, Parker personally laundered substantial amounts of money belonging to four institutions—Victim College, Victim ABP Fraud, Victim Company AP, and the Victim Trust—many of which were focused on doing good for the community.

Victim College, a small but long-established liberal arts college, was deceived into sending more than $400,000 to Truist 9281, which Parker controlled through Parker Transports LLC. Parker and her co-conspirators quickly moved the money into other accounts, including other accounts that Parker controlled like Citi 0305 and BOA 1316, $80,000 of which was layered by transfer to JPMC 5057. Some of the checks contained false notations in the memo line like "Truck Purchase." ECF 237-1 at 3.

Victim ABP, a 501(c)(3) organization dedicated to helping low-income communities, was deceived into sending a wire for $2,529,320, believing it to be a legitimate business debt, to a PNC account ending in 6379. This account was in the name of a fake identity, but was actually controlled by an associate of Parker. This associate split the money between various accounts, including sending more than $630,000 through accounts that Parker controlled. Parker was later captured on bank surveillance withdrawing some of these funds in cash, which she used for various personal luxury expenses, including more than $4,800 at Apple in Towson, Maryland and over $8,500 at RK Luxury Jewelers in Baltimore, Maryland. *See id.*

Parker also furthered the conspiracy by conducting wire transfers and calling Bank of America to inquire about which branches would allow her to purchase cashier's checks. ECF 237-1 at 3-4.

Victim AP, a small LLC, was deceived into sending roughly $1.1 million, believing it to be a legitimate bill, to an account at Woodforest Bank ending in 4636. Parker's CashApp account ended up receiving $8,000 from this fraud. ECF 237-1 at 4.

Victim Trust was responsible for an important environmental clean-up project in California, specifically working to decontaminate and deconstruct a battery recycling facility. The Trust attempted to make payments to a vendor in connection with this project, but was deceived into sending wires totaling over $2.7 million to a PNC account ending in 4286. ECF 237-1 at 4. This account was controlled by Gedeon Agbeyome, and he sent these stolen funds to multiple accounts, $16,000 of which was ultimately sent to Parker's CashApp account. *Id.*

**Procedural History and The Advisory Sentencing Guidelines Calculation**

On November 16, 2023, the grand jury returned an Indictment against the Defendant and nine other individuals, charging them with multiple criminal offenses, including conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). ECF 1 (MJM-23-411), Count One. Parker was also charged in Counts Two and Three with conducting particular money laundering transactions, in violation of 18 U.S.C. §§ 1956(a)(1)(A), (a)(1)(B). *See id*. On this same day, the grand jury returned a separate Indictment against Parker and another individual, charging them with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. ECF 1 (MJM-23-412). Parker was also charged in Counts Two through Six with substantive counts of wire fraud, in violation of 18 U.S.C. § 1343. *See id.*

On February 7, 2024, the Defendant had her initial appearance. ECF 29 (MJM-23-411). The Defendant was released on conditions. ECF 61 (MJM-23-411).

On December 5, 2024, the grand jury returned a Superseding Indictment against the Defendant and others, including conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). ECF 153 (MJM-23-411), Count One. Parker also was charged in Counts Two, Four, and Five with conducting particular money laundering transactions, in violation of 18 U.S.C. §§ 1956(a)(1)(A), (a)(1)(B). Parker appeared on the Superseding Indictment on July 22, 2025, and entered a plea of guilty to Count One of the Superseding Indictment. ECF 234-35 (MJM-23-

411). Parker also appeared on the other Indictment on this date and entered a plea of guilty to Count One of that Indictment. ECF 25 (MJM-23-412).

Pursuant to the plea agreement, as to Count One in MJM-23-411, the parties agreed on a base offense level of eight (8), in accordance with U.S.S.G. §§ 2X1.1, 2S1.1(a)(2). The parties also agreed to increase the base offense level by fourteen (14) levels, pursuant to U.S.S.G. §§ 2S1.1, 2B1.1(b)(1)(H), because the loss associated with the Defendant's offense was more than $550,000, but less than $1.5 million. *See* ECF 237 at 5 ¶ 6a (Plea Agreement); ECF 244 (MJM-23-411), Presentence Report ("PSR") at ¶ 35.

The plea agreement and the PSR further calculated that the offense level should be increased (i) by two (2) levels, pursuant to U.S.S.G. § 2S1.1(b)(2)(B), because the offense involved a conviction under 18 U.S.C. § 1956; and (ii) by two (2) levels, pursuant to U.S.S.G. § 2S1.1(b)(3), because the offense involved sophisticated laundering This results in a adjusted offense level of twenty-six (26). PSR at ¶ 47.

As to Count One in MJM-23-412, the parties agreed on a base offense level of seven (7), in accordance with U.S.S.G. §§ 2X1.1, 2B1.1(a)(1). Plea Agreement at ¶ 6b. The parties also agreed to increase the base offense level by fourteen (14) levels, pursuant to U.S.S.G. §§ 2S1.1, 2B1.1(b)(1)(H), because the loss associated with the Defendant's offense was more than $550,000, but less than $1.5 million. *Id.* The plea agreement calculated that the offense level should be increased by two (2) levels, pursuant to U.S.S.G. § 2S1.1(b)(3), because the offense involved sophisticated laundering. *Id.* This results in an adjusted offense level of twenty-three (23). *Id.*

The parties agreed that pursuant to U.S.S.G. § 3Dl.2(d), both counts of conviction in MJM-23-411 and MJM 23-412 involve substantially the same harm and should be grouped together. *Id.* at ¶ 6c. Pursuant to § 3Dl.3, the final offense level is twenty-six (26) because the guidelines for MJM-23-411 result in a higher offense level. As reflected in the PSR, the Defendant's timely

acceptance of responsibility results in a further reduction of three levels, and an adjusted offense level of 23. PSR at ¶¶ 41-51.

Unlike multiple other defendants to appear before this Court, Parker has a prior criminal history, which involves two theft convictions in 2010 and 2017.[2] The statement of charges regarding the 2017 conviction indicates that she was attempting to steal from a vehicle parked outside the victim's home. When law enforcement responded, Parker was verbally abusive toward the responding law enforcement officers. As a result of her theft convictions, Parker should be sentenced based on a criminal history category of two, with a recommended sentence between 51 and 63 months of incarceration.

**<u>The 3553(a) Sentencing Analysis</u>**

As this Court is aware, it must impose a reasonable sentence that is sufficient but not greater than necessary to achieve the goals of sentencing, based on multiple factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," the need "to promote respect for the law," the need for just punishment without unwarranted sentencing disparities and the need for both specific and general deterrence. 18 U.S.C. § 3553(a).

Here, the nature and circumstances of Parker's crimes were very serious. Parker's money laundering was part of an extensive criminal network stretching around the globe that inflicted significant harm on numerous victims. Parker was not a leader in the conspiracy, but she participated in the money laundering for years and personally laundered over a million dollars. Her money laundering involved frauds that hurt many different people and organizations. These business email compromise schemes are greatly furthered by having a cadre of willing co-conspirators available to deposit fraud funds, and then rapidly engage in requested financial

---

[2] In 2014, Parker was also convicted of driving without authorization and in 2019 of failure to obey a lawful order, but those convictions did not result in a criminal history point increase.

transactions, such as overseas wires, cash withdrawals, purchases of cashier's checks, and CashApp transfers. By the time that victims realized they had been deceived and got their financial institutions and law enforcement involved, the fraud proceeds had been layered so many times that the funds were beyond the reach of law enforcement, banks, and the victims.

Parker showed deliberate disregard for the legal system by knowingly joining and carrying out her illegal activity. The role that she and others played in the money laundering conspiracy should not be discounted or denied. Parker directly enabled and furthered the criminal conspiracy for her own financial benefit.

As the Court has recognized in other sentencings in this case, the new criminal conduct Parker has now admitted has caused harm, as it involves "taking advantage of victims' vulnerabilities" both to steal money and make it more difficult for stolen money to be recovered. ECF 232 (MJM-23-411), Transcript of Sentencing at 33:5-8, *United States v. Kevin Colon* (June 20, 2025). Further, this Court has recognized that even an actor who is "not at the top of the conspiracy" and whose "conduct consisted primarily of taking directions of others" can still "exercise some significant degrees of discretion along the way." *Id.* at 34:2-5. Acting "in furtherance of the conspiracy several times" and contributing to "very substantial losses makes [one's] culpability high enough to warrant a prison sentence of appreciable length." *Id.* at 34:5-9.

Moreover, Parker will be sentenced by this Court for having engaged in both the COVID-19 wire fraud and the money laundering. Unlike many others appearing before this Court, Parker directly participated in the EIDL frauds. Parker's accounts showed multiple direct deposits from the SBA, putting her on notice that she was involved in pandemic fraud, and she also obtained a significant amount of additional EIDL funds after they had been layered through other accounts. Cumulatively, Parker has stipulated that her accounts received more than $550,000 in fraudulent

EIDL money.

Parker's history and characteristics should also be a source of concern for this Court. Parker had eight run-ins with the law before her indictments in these cases, including four convictions and four sets of charges that were dropped. She committed two theft offenses—years apart from one another—that resulted in her classification as criminal history category II. She also was convicted for driving without a license, and more recently for failure to obey a lawful order. Woven throughout her criminal history are multiple indications that Parker has a disregard for the law.

Moreover, there is a need in this case for both specific deterrence due to Parker's repeated criminal acts, and general deterrence due to the need to put others on notice not to take the easy money that these types of schemes offer. As this Court previously recognized, a significant period of incarceration is necessary to fight the unfortunate "perception out there that this kind of conduct is not that big of a deal and it's hard to get caught." *Id.* at 35:7-12.

The government submits that a sentence of 48 months' imprisonment would constitute a reasonable sentence pursuant to 18 U.S.C. § 3553(a), and the Supreme Court's decision in *Gall v. United States*, 552 U.S. 38, 51 (2007). It is necessary based on "the nature and circumstances of the offense," "the history and characteristics of the defendant," the need "to promote respect for the law," and the need for both specific and general deterrence. 18 U.S.C. § 3553(a). The government further asks the Court to order supervised release of three years, restitution as set forth

in Exhibit 1, and a $200 special assessment.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

/s/

Harry M. Gruber
Bijon A. Mostoufi
Jared M. Beim
Assistant United States Attorneys
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201-2692

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Government's filing was served via email on the defendant's counsel.

________/s/_______________
Jared M. Beim
Assistant United States Attorney